OPINION OF THE COURT
Phylis Skloot Bamberger, J.
All the defendants are charged with criminal enterprise corruption, and promoting gambling in the first degree. Some but not all of the defendants are charged with related offenses. They have all filed pretrial motions in which they assert that the People failed to comply with CPL 700.70, which requires the prosecution to furnish copies of eavesdropping warrants and accompanying applications within 15 days of arraignment on the indictment. They requested that the People be prevented from using the evidence derived from those warrants. For the reasons set out, the motions to prevent the use of evidence are granted.
FACTUAL FINDINGS
On April 17, 1991, the defendants were arraigned on the indictment. On April 29, 1991, the People furnished to the defendants copies of documents they claim meet their section 700.70 obligations. Subsequent defense motions urged that there were numerous photocopying errors in the documents provided to the defense and that these errors together with other defects alleged required the court to impose a sanction for the violation of CPL 700.70. This court obtained the original of the 6 warrants and 36 extension orders and their applications from each of the 5 Judges who signed a warrant or an extension order. A hearing concerning the defendants’ allegations was held on September 23, 1991, October 9, 1991, and November 4, 1991. At the hearing, the court and counsel compared each and every warrant and its accompanying application with the material furnished to the 10 defendants. The defense was given an opportunity to make a record of *385 each asserted defect and the People were provided an opportunity to respond.
It became obvious that the defects in the turnover were far more serious than "a few errors in the photocopying process” as the People characterized the problem. The court finds the following defects in the turnover of the original warrant and application and extensions of that warrant made pursuant to CPL 700.70.
The first warrant issued in the investigation was signed on December 12, 1988. This original warrant was extended three times, on January 11, 1989, February 9, 1989, and March 8, 1989, and it expired April 10, 1989. The applications for each of these extensions incorporated by reference the original warrant and its accompanying application. In addition to the original warrant, five other eavesdropping warrants and many extension orders were issued during the investigation of this case. Each of these other warrants and all of the extensions of 4 of the 5 warrants incorporated by reference the original warrant and its application. Because the original warrant and its application were incorporated by reference into all the subsequent warrants, extensions and applications, the defects in the turnover of the original warrant and its application affected the later documents.
The defects in the original warrant and its application were as follows. First, the turnover was of working copies rather than copies of the documents presented to and signed by the issuing Justices. This resulted in textual differences in the copies signed by the issuing Justice and that given to the defendants. Second, the copies given to the defense were not conformed copies. Consequently, anything written into the warrant by the authorizing Judge, including the date on which the warrant was signed, was unknown to the defense. Third, pages and parts of pages of the original warrant and its application were not furnished to the defendants. Finally, pages and paragraphs of the original warrant and supporting documents were copied in a manner that was so poor that portions of the pages were absent or unreadable. Similar defects occurred with respect to the turnover of the extensions to the original warrant and in the subsequent warrants and their extension orders. One of the subsequent extension orders and its application were not turned over at all.
LEGAL CONCLUSIONS
In opposition to the defendants’ motions, the People *386 assert first that only total noncompliance with CPL 700.70 should prevent their use of the evidence, and, second, that substantial rather than strict compliance satisfies section 700.70. They insist that their conduct constitutes substantial compliance. However, the claim of substantial compliance is rejected.
Just one month ago, the Court of Appeals demonstrated that the substantial compliance test is not relevant to evaluating section 700.70 turnover. In People v Liberatore (79 NY2d 208, 216), the court reaffirmed that it would not depart from its "long tradition of construing the eavesdropping statute strictly and requiring meticulous compliance with its provisions.” In Liberatore (supra, at 212-213), the Court of Appeals quoted liberally from People v Schulz (67 NY2d 144, 148-149 [1986]), in which the court held: "[T]here must be strict compliance with the provisions of New York’s eavesdropping statute (CPL art 700) * * * As we observed in People v Washington (46 NY2d, at pp 121-122, supra) '[o]ur interpretation of article 700 must be sensitive to the constitutional guarantees against search and seizure that the statute seeks to protect. The insidiousness of electronic surveillance threatens the right to be free from unjustifiable governmental intrusion into one’s individual privacy to a far greater extent than the writs of assistance and general warrants so dreaded by those who successfully battled for the adoption of the Bill of Rights (Olmstead v United States, 277 US 438, 476, 478 [Brandeis, J., dissenting])’. It is imperative, therefore, that ■article 700 and all its integral parts [not] be treated lightly or with cavalier disregard’ (People v Mark, 68 AD2d 315, 318, supra) and that law enforcement officials be sensitive to the fact that there must be meticulous adherence to the terms of the warrant and the statute pursuant to which it issued”. (Emphasis added.) After Liberatore it must be said that turnover of everything within the terms of section 700.70 is what is required and anything less is permitted only if a compelling countervailing factor is present to balance against the requirement of strict compliance. In Liberatore, a court order sealing the affidavit of a confidential informant to protect his identity and safety and to safeguard an ongoing criminal investigation justified a departure from the turnover mandate. There, the prosecutor simply could not provide the seven-page affidavit of the informant without being in contempt. Here, there was no interest asserted by the People that would excuse a failure to *387 make full and complete turnover of every document within section 700.70.
There may be an instance in which a defect in a turnover is so trivial or de minimis that the turnover can be considered complete. Nevertheless, whatever a de minimis defect in an otherwise complete turnover might be, the defects here are serious and material and surely not de minimis. In making this finding this court does not rely upon the numerous instances in which a letter or even a line on a page was omitted. With regard to the original warrant, this court has found that two of the four pages of the original warrant and one page of its application were not given to the defense. There were numerous illegible pages or portions of pages in those documents. Furthermore, the copy of the 11-paragraph Hansen affidavit given to the defendants did not include paragraphs 7, 8, and 9, and portions of paragraphs 6 and 10. The copy of the 53-paragraph Koran affidavit given to the defendants did not contain significant information about the confidential informant, and did not include paragraphs 7, 8, 13, 14, 15, 40, 41, and 42. In addition, the working copies of the original warrant application furnished to the defendants were not identical to the actual warrant and its application presented to the issuing Justice and were not conformed so as to show the entries made by the Justice at the time he signed the warrant.
Because each application for an extension of the original warrant and every subsequent application for an additional eavesdropping warrant relied upon the original warrant, this court holds that the defective turnover of the original warrant and its application infects all of the original warrant’s extensions and all later warrants and their extensions.
The People provide various reasons for excusing the defective turnover. They argue that the defendants were not prejudiced by the defects. However, prejudice is relevant only in a determination of whether to grant a motion made by the People for an extension of the 15-day period to make a turnover. By the express words of the statute, the court must consider whether there is good cause for the delay and whether the delay would prejudice the defendant. Prejudice is irrelevant when considering a defense motion asserting a section 700.70 violation. When considering such a motion, only compliance is considered. (People v Schulz, 67 NY2d, supra, at 151-152; People v Basilicato, 64 NY2d 103, 117 [1984].)
*388 The People also petition the court to find good cause to extend the 15-day service period and state that they will consent to give the defendant additional time to file pretrial motions to cure any prejudice suffered. However, a prosecution motion for an extension must be made within the 15-day period authorized in CPL 700.70 and the court has no power to extend the section 700.70 time period once the time has expired. (People v Schulz, 67 NY2d, supra, at 150; see also, People v Liberatore, 79 NY2d 208, 213, supra.)[1] Although it is of no legal significance in this case, it should be noted that the People have offered no basis for seeking an extension of the time to serve the material. They rely only on a claim of office ineptitude — that there were many pages to copy and the person who copied the materials made mistakes. This is not good cause; it is sloppiness.
In conclusion, the People may not introduce at trial the contents of any intercepted communication obtained pursuant to an eavesdropping warrant or any evidence derived from the use of eavesdropping warrants.[2] Consequently, the People must now establish that there is evidence independent of the warrants to support the charges in the indictment.
[Portions of opinion omitted for purposes of publication.]

. The People’s reliance on People v Mullen (152 AD2d 260, 270, n 2 [3d Dept 1989]) is to no avail. That case is directly contrary to the express language of People v Schulz (67 NY2d, supra, at 150), which was quoted with approval in People v Liberatore (79 NY2d 208, 212-213, supra).

. Defendant Robbins has referred to the relief sought for violation of section 700.70 as an order "suppressing the use of the” intercepted communications and evidence derived therefrom. Defendants Capolongo and Conforti seek "suppression” because of the section 700.70 violation. It is unclear from the language of the statutes and the case law whether an order preventing the People from using the evidence is an order of suppression or preclusion. (Compare, People v Laing, 79 NY2d 166, and People v Taylor, 65 NY2d 1, 6-7 [1985] [failure to give notice under CPL 710.30 warrants preclusion not suppression because section 710.30 notice requirement operates in advance of suppression motion], with People v Schulz, 67 NY2d, supra, at 149 [characterizing remedy for section 700.70 violation as suppression of the evidence obtained through the wiretap].) It appears that resolution of this matter may affect the People’s right to review of this order, and accordingly, this opinion expresses no view of the issue.